******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PEOPLE FOR THE ETHICAL TREATMENT OF
ANIMALS, INC. *v.* FREEDOM OF
INFORMATION COMMISSION
ET AL.
(SC 19593)
(SC 19594)

Rogers, C. J., and Palmer, Zarella, McDonald and Espinosa, Js.

*Argued February 26—officially released June 28, 2016*

*Charles H. Walsh*, assistant attorney general, with whom were *Kerry Anne Colson*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellants in Docket Nos. SC 19593 and SC 19594 (defendant University of Connecticut Health Center et al.).

*Martina Bernstein*, pro hac vice, with whom, on the brief, were *Joseph J. Blyskal III* and *Gabriel Z. Walters*, pro hac vice, for the appellee in Docket Nos. SC 19593 and SC 19594 (plaintiff).

*Opinion*

PALMER, J. In these appeals, we must determine the standard of review that applies to a determination that public records are exempt from the disclosure provisions of the Freedom of Information Act (act), General Statutes § 1-200 et seq., pursuant to General Statutes § 1-210 (b) (19),[1] because there are reasonable grounds to believe that their disclosure may result in a safety risk. The plaintiff, People for the Ethical Treatment of Animals, Inc., submitted a freedom of information request to the defendant University of Connecticut Health Center (Health Center), requesting copies of all correspondence between the Health Center and the National Institutes of Health regarding potential noncompliance with federal animal welfare guidelines. The Health Center produced the requested documents but redacted the names of the individuals who had violated federal protocols and grant identification numbers that would make it possible to identify those individuals. The plaintiff then filed a complaint against the Health Center with the named defendant, the Freedom of Information Commission (commission). While the complaint was pending, the Health Center requested a safety risk determination from the defendant Commissioner of the Department of Administrative Services (department)[2] pursuant to § 1-210 (b) (19) and (d).[3] The department determined that there were "reasonable grounds to believe that [the] disclosure of this [redacted] material may result in a safety risk to persons or property" and directed the Health Center to withhold the redacted information. The commission upheld this determination. The plaintiff appealed from the commission's decision to the trial court, which sustained the appeal and ordered the Health Center to disclose the redacted information. The Health Center and the department then brought separate appeals,[4] claiming that the trial court incorrectly determined that the commission had applied the wrong standard of review when it sustained the plaintiff's appeal. We agree with the Health Center and the department that the commission applied the proper standard of review. Accordingly, we reverse the judgment of the trial court. We further conclude that the case should be remanded to that court so that it may decide whether the commission, upon application of the proper standard of review, properly upheld the determination of the department.

The record reveals the following facts that the commission found or that are undisputed. On October 18, 2012, the plaintiff submitted a freedom of information request to the Health Center for all correspondence between the Health Center and the National Institutes of Health concerning potential noncompliance with federal animal welfare guidelines from January 1, 2009, until October 18, 2012. Thereafter, the Health Center provided sixty-one pages of redacted records. Some of

the redactions were the names of employees involved in animal research and some were federal grant numbers, which could be used to identify the researchers working on the grants. By letter dated December 6, 2012, the plaintiff complained to the commission that the Health Center had violated the act by redacting the information.

The Health Center subsequently wrote to the department requesting a safety risk determination pursuant to § 1-210 (b) (19) and (d). The Health Center attached to its letter two letters from the Department of Public Works dated August 1, 2008, and June 16, 2010, regarding previous freedom of information requests related to the Health Center's animal research programs.[5] In both letters, the Department of Public Works determined that disclosure of the identities of persons involved in animal research posed a safety risk and, therefore, that the information was exempt from the disclosure provisions of the act. Partly on the basis of these letters, the department determined in the present case that "there [were] reasonable grounds to believe that disclosure of this material [identifying the researchers who had failed to comply with federal animal welfare guidelines] may result in a safety risk to persons or property."[6] Accordingly, the department directed the Health Center "to withhold, or redact accordingly, the information" that would disclose the identity of the animal researchers who had violated federal animal welfare guidelines.

Thereafter, the commission conducted a hearing on the plaintiff's complaint and concluded that the department had "reasonable grounds to believe that disclosure of the names and grant numbers of researchers reported for failing to comply with animal welfare guidelines may create a safety risk . . . ." In reaching this conclusion, the commission relied on the Superior Court decision in *Commissioner of Correction* v. *Freedom of Information Commission*, Superior Court, judicial district of New Britain, Docket No. CV-07-4015438-S (November 3, 2008) (46 Conn. L. Rptr. 533, 535), for the proposition that it was required "to determine whether the [department's] reasons were pretextual and not bona fide, or irrational." (Internal quotation marks omitted.) The commission concluded that the department's "reasons were not irrational and that the [department] acted in good faith and without pretext in believing that disclosure of the redacted information may result in a risk of harm."

The plaintiff appealed from the commission's decision to the trial court. The trial court concluded that, although the standard set forth in *Commissioner of Correction* v. *Freedom of Information Commission*, supra, 46 Conn. L. Rptr. 535, "may be relevant, it is not the standard set" by this court. Rather, the trial court, quoting this court's decision in *Director, Dept. of Infor-*

*mation Technology* v. *Freedom of Information Commission*, 274 Conn. 179, 191–92, 874 A.2d 785 (2005), concluded that "[t]he burden of proving the applicability of an exception [to disclosure under the act] rests [on] the party claiming it. . . . In particular, [t]his burden requires the claimant of the exemption to provide more than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." (Citation omitted; internal quotation marks omitted.) Applying this standard, the trial court concluded that, although the Health Center had presented evidence that there was a safety risk to the general community of animal researchers, that risk was not the relevant one because the names of those researchers already were in the public domain through the publication of scholarly articles. The court concluded that the relevant risk was the risk to animal researchers who had failed to comply with the relevant research protocols and that the Health Center had presented no evidence of such a risk. Although Raymond Philbrick, the director of security for the department, had testified at the hearing before the commission that the release of the names of the researchers who had violated the research protocols could make them "more of a target" for a "fringe group" or for individuals opposed to animal research, the court concluded that the testimony was mere opinion and conjecture, and did not satisfy the standard set forth in *Director, Dept. of Information Technology*. Accordingly, the trial court sustained the plaintiff's appeal, reversed the commission's decision and ordered the Health Center to disclose the redacted information.

These appeals followed. The Health Center and the department contend that the trial court failed to properly distinguish between the scope of the commission's review of a safety risk assessment made by the department pursuant to § 1-210 (b) (19) and (d), which is set forth in *Commissioner of Correction* v. *Freedom of Information Commission*, supra, 46 Conn. L. Rptr. 535, and the department's burden of proof, which is set forth in *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 191–92. The Health Center and the department further contend that, under the standard of review set forth in *Commissioner of Correction*, both the commission and the trial court are required to defer to the department's assessment. The plaintiff contends that the Health Center and the department waived any claim that *Director, Dept. of Information Technology* did not set forth the proper standard of review when the department conceded in the trial court that the standard set forth in that case applied to the department's determination.[7] The plaintiff further contends that the trial court properly found that, under *Director, Dept. of Information Technology*, the Health Center and the department

failed to satisfy their burden of proving that disclosure of information concerning the identities of researchers who violated animal care protocols would pose a safety risk. We conclude that the claim is reviewable and we agree with the Health Center and the department that the commission applied the correct standard of review in determining that the safety risk exemption applied to the redacted information.[8]

We first address the plaintiff's claim that the Health Center and the department waived their claim that *Commissioner of Correction* v. *Freedom of Information Commission*, supra, 46 Conn. L. Rptr. 535, and not this court's decision in *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 191–92, supplies the proper standard of review. We disagree. The commission argued to the trial court that, "under [§ 1-210 (b) (19)], [it is] clear that the message to the commission is that [the department is] entitled to deference." It further argued that the Superior Court decision in *Commissioner of Correction* was the only decision involving a statute directing an agency other than the commission to determine whether an exemption applies in the first instance. In addition, the commission questioned "how much value [*Director, Dept. of Information Technology*] has . . . because . . . in [that] case, the [plaintiff] did not follow [§ 1-120 (b) (19)]. So when the [court] reviewed the commission's decision, it was . . . doing so outside the framework that had been established by the legislature . . . ."[9] Although the commission did not cite the standard set forth in *Commissioner of Correction* in its brief to the trial court, which the department joined, the commission expressly contended that the commission and the trial court should defer to the department's safety risk assessment. Specifically, the commission contended that, "[when] a statutory provision [such as § 1-210 (b) (19)] is subject to more than one plausible construction, the one favored by the agency charged with enforcing the statute will be given deference," and noted that the department, which was charged with performing the safety risk assessment in the first instance, had found that disclosure of the redacted information would have created such a risk. This is essentially the same standard as the standard that the Superior Court applied in *Commissioner of Correction*. Moreover, the trial court, in its memorandum of decision, expressly addressed the issue of whether *Commissioner of Correction* provided the proper standard of proof and concluded that it did not. Accordingly, it is clear to us that the essence of the claim that the Health Center and the department raise on appeal was properly before the trial court.

We conclude, therefore, that we may review the claim that, pursuant to § 1-210 (b) (19), the commission and the trial court were required to defer to the department's determination that the disclosure of the redacted infor-

mation would create a safety risk if the department provided reasons that were bona fide and not pretextual or irrational. See *Commissioner of Correction* v. *Freedom of Information Commission*, supra, 46 Conn. L. Rptr. 535. This is a question of statutory interpretation, over which our review is plenary.[10] See, e.g., *State* v. *Crespo*, 317 Conn. 1, 8, 115 A.3d 447 (2015); see also *Crews* v. *Crews*, 295 Conn. 153, 161, 989 A.2d 1060 (2010) ("[d]etermining the appropriate standard of review is a question of law, and as a result, it is subject to plenary review"). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *State* v. *Crespo*, supra, 9.

We begin with the language of § 1-210 (b) (19). That statute exempts records from the disclosure requirements of the act "when there are reasonable grounds to believe disclosure may result in a safety risk, including the risk of harm to any person . . . . Such reasonable grounds shall be determined . . . by the [department], after consultation with the chief executive officer of an executive branch state agency . . . ." General Statutes § 1-210 (b) (19). Although this court has not previously construed this language in § 1-210 (b) (19) for the purpose of determining the scope of the department's discretion in making the safety risk determination and the scope of the commission's review of that determination,[11] it has construed similar language in a related statute. In *Van Norstrand* v. *Freedom of Information Commission*, 211 Conn. 339, 559 A.2d 200 (1989), this court considered the scope of General Statutes (Rev. to 1989) § 1-19 (b) (1), which is now codified at § 1-210 (b) (1), and which exempts from the disclosure provisions of the act "[p]reliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure . . . ." We noted in *Van Norstrand* that the public agency referred to in the statute is the agency to which the freedom of information request was directed. See *Van Norstrand* v. *Freedom of Information Commission*, supra, 345. We then stated that, "[a]lthough the statute places the responsibility for making [the] determination [to withhold the documents] on the public agency involved, the statute's language strongly suggests that the agency may not abuse its discretion in making the decision to withhold disclosure. The agency must, therefore, indicate the reasons for its determination to withhold disclosure and those reasons must not be frivolous or patently unfounded." (Internal quotation marks omitted.) Id. We held that, "[h]aving concluded

that there had been a good faith consideration of the effect [on] disclosure [by the agency], and not having found an abuse of discretion, the [commission] had determined all that was required of it by statute to qualify the requested information for the exemption [at] issue . . . ." Id., 346; see also *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 339, 435 A.2d 353 (1980) (agency's determination that records should be withheld pursuant to predecessor to § 1-210 [b] was upheld when reasons provided by agency were not "frivolous or patently unfounded").

Thus, we determined in *Van Norstrand* that, when the act provides that an agency other than the commission must determine whether records fall within a particular exemption in the first instance, the agency has broad discretion to make that determination, and the commission must give deference to that determination.[12] See *Van Norstrand* v. *Freedom of Information Commission*, supra, 211 Conn. 345–46. We further note that, under § 1-210 (b) (19), the department is required to determine only that there are "*reasonable grounds to believe* disclosure *may* result in a safety risk . . . ." (Emphasis added.) This language supports the conclusion that the department is authorized to rely on the experience and professional expertise of its employees to make a predictive judgment. The statute imposes no requirement that, in making its assessment, the department may only consider evidence of previous instances in which persons were subjected to threats or violence as the result of similar disclosures. The statute also does not require that there must be a clear safety risk to justify nondisclosure or that the safety risk must outweigh the public interest in disclosure.[13] Cf. *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 192 (when text of statutory exemption to act's disclosure requirement does not require balancing between public interest in disclosure and need for confidentiality, "neither the [commission] nor the courts are required to engage in a separate balancing procedure" [internal quotation marks omitted]); *Chairman, Criminal Justice Commission* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991) ("[t]he fact that the legislature specifically declined to include a balancing requirement in [the predecessor to § 1-210 (b) (2)] is strong evidence that a balancing test is inappropriate when applying [the exemption]"). Accordingly, there are even stronger grounds in the present case for concluding that the legislature intended to grant broad discretion to the department than there were in *Van Norstrand*, in which the statute at issue provided that documents were exempt from disclosure "provided the public agency has determined that the public interest in withholding such documents *clearly outweighs* the public interest in disclosure . . . ." (Emphasis added.) General Statutes (Rev. to 1989) § 1-19 (b) (1); see *Van*

*Norstrand* v. *Freedom of Information Commission*, supra, 211 Conn. 345. We therefore agree with the Health Center and the department that, under § 1-210 (b) (19) and (d), the safety risk assessment must be performed by the department in the first instance, after consulting with the head of the relevant state agency, and that both the commission and the trial court should defer to the department's assessment unless the party seeking disclosure establishes that the determination was frivolous, patently unfounded or in bad faith.[14] See *Van Norstrand* v. *Freedom of Information Commission*, supra, 345–46.

Having concluded that our decision in *Van Norstrand* provides the standard of review for claims involving § 1-210 (b) (19), we next address the issue of whether the commission applied the proper standard in the present case. As we have indicated, the commission applied the standard set forth in *Commissioner of Correction*, under which "the [commission's] role is to determine whether the [agency's] reasons were pretextual and not bona fide, or irrational." (Internal quotation marks omitted.) *Commissioner of Correction* v. *Freedom of Information Commission*, supra, 46 Conn. L. Rptr. 535. We have concluded in this opinion that the commission must defer to the department's determination unless it is "frivolous or patently unfounded"; (internal quotation marks omitted) *Van Norstrand* v. *Freedom of Information Commission*, supra, 211 Conn. 345; or was not arrived at in "good faith . . . ." Id., 346. Although these standards are not identical, we conclude that they are sufficiently similar that there is no reasonable possibility that the commission would have reached a different conclusion if it had applied the *Van Norstrand* standard. Accordingly, we conclude that the commission effectively applied the proper standard.[15]

The fact that the commission, in effect, applied the proper standard does not necessarily mean, however, that it properly determined that the standard was satisfied. Because the trial court concluded that the commission had applied an improper standard, the court had no reason to address that issue. Accordingly, we conclude that the case should be remanded to the trial court so that it may determine whether the commission properly concluded that the department's determination that disclosure of the redacted information would create a safety risk was not frivolous or patently unfounded and was arrived at in good faith.

The judgment is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

[1] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of:

\* \* \*

"(19) Records when there are reasonable grounds to believe disclosure may result in a safety risk, including the risk of harm to any person, any

government-owned or leased institution or facility or any fixture or appurtenance and equipment attached to, or contained in, such institution or facility, except that such records shall be disclosed to a law enforcement agency upon the request of the law enforcement agency. Such reasonable grounds shall be determined (A) (i) by the Commissioner of Administrative Services, after consultation with the chief executive officer of an executive branch state agency, with respect to records concerning such agency . . . ."

[2] Because we refer to the Freedom of Information Commission as the commission, we refer to the Commissioner of the Department of Administrative Services as the department rather than as the commissioner to avoid confusion.

[3] General Statutes § 1-210 (d) provides in relevant part: "Whenever a public agency . . . receives a request from any person for disclosure of any records described in subdivision (19) of subsection (b) of this section under the Freedom of Information Act, the public agency shall promptly notify the Commissioner of Administrative Services . . . of such request . . . before complying with the request . . . . If the commissioner, after consultation with the chief executive officer of the applicable agency . . . believes the requested record is exempt from disclosure pursuant to subdivision (19) of subsection (b) of this section, the commissioner may direct the agency to withhold such record from such person. . . ."

[4] The Health Center and the department filed separate appeals with the Appellate Court, which consolidated the appeals. Thereafter, we transferred the consolidated appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] The Department of Public Works was the department's predecessor for purposes of preparing safety risk assessments pursuant to § 1-210 (b) (19) and (d). See Public Acts 2011, No. 11-51, § 44.

[6] The department stated as follows: "The Commissioner of [Public Works] wrote in 2008: 'Both federal and state authorities have recognized the history of threat, harassment and intimidation directed against those involved in animal research, particularly those working at the nation's universities.' In her 2010 letter, she detailed some [thirty] incidents between 2004 and 2009 involving violence or threats of violence against person[s] and property by animal rights extremists.

"The record provides extensive evidence that release of the names of researchers puts those researchers at an elevated risk of harm from those opposed to their work. The nature of this opposition is qualitatively different from mere political opposition and has been manifested in violent acts time and again.

"The record and our consultations persuade me to find that there are reasonable grounds to believe that disclosure of this material may result in a safety risk to persons or property.

"You are directed to withhold, or redact accordingly, the information submitted to us."

[7] The commission cited the standard set forth in *Director, Dept. of Information Technology* in its brief to the trial court, which the department joined.

[8] Although we conclude that the commission applied the proper standard, as we discuss subsequently in this opinion, we express no opinion as to whether the commission properly applied that standard.

[9] We recognize that, as the plaintiff notes, when the trial court asked commission counsel at trial why the commission had not cited *Director, Dept. of Information Technology* in its decision, counsel responded that the commission had not done so because it was "obvious" that the case applied, in the sense that the party claiming an exemption always has to present specific evidence in support of its claim. When the trial court then asked commission counsel if the commission had applied the proper standard, however, counsel responded that the commission had because "the only court decision that . . . interprets . . . statutes that have virtually identical language [as § 1-210 (b) (19)] is [*Commissioner of Correction* v. *Freedom of Information Commission*, supra, 46 Conn. L. Rptr. 535, which] sets the threshold very low." Accordingly, while it is arguable that the commission muddied the waters by suggesting that *both Commissioner of Correction* and *Director, Dept. of Information Technology* apply to safety risk determinations made pursuant to § 1-210 (b) (19) and (d) without further explaining how that could be the case, we do not agree with the plaintiff that this constituted a waiver of the Health Center's and the department's claim that *Commissioner of Correction* provides the proper standard of review.

[10] The Health Center and the department do not claim that the commission's determination that *Commissioner of Correction* supplied the proper

standard of proof is entitled to deference. Cf. *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 164, 931 A.2d 890 (2007) ("an agency's interpretation of a statute is accorded deference when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable").

[11] Section 1-210 (b) (19) was at issue in *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 179. The plaintiff in that case, however, never sought a safety risk assessment from the Department of Public Works, as the statute then provided. See id., 189–90 (plaintiff bore burden of seeking public safety determination and failed to do so). Indeed, it would appear that neither party in *Director, Dept. of Information Technology* raised § 1-210 (b) (19) until the commission raised it in its brief to the trial court. Id., 188 n.8 (first mention of § 1-210 [b] [19] was in commission's brief to trial court). Accordingly, there was no occasion for this court to consider the standard of review that would apply to the safety risk assessment.

[12] The plaintiff in the present case does not dispute that, when an agency has invoked § 1-210 (b) (19) in response to a request for information, the department is required to make the safety risk determination in the first instance. See *Pictometry International Corp.* v. *Freedom of Information Commission*, 307 Conn. 648, 666, 59 A.3d 172 (2013) ("[u]nder § 1-210 [b] [19], [the] safety determination is to be made by the [department] in consultation with the head of the relevant state agency, not by the commission").

[13] It is reasonable to conclude, however, that the legislature did not intend that § 1-210 (b) (19) would apply if the risk to safety is purely speculative or de minimis.

[14] We recognize that, by creating this statutory scheme, the legislature effectively eliminated the department's burden of proving to a finder of fact that § 1-210 (b) (19) exempts records from the disclosure provisions of the act. In ordinary usage, the phrase "burden of proof" refers to the burden borne by a party in an adversarial proceeding before an impartial fact-finding tribunal. In contrast, when an agency seeks a safety risk determination from the department pursuant to § 1-210 (b) (19) and (d), the department acts both as a party—that is, it produces evidence and arguments to support its position—and as the finder of fact, and the proceeding is adversarial only to the extent that the agency and the department may disagree as to whether the exemption should apply. To be sure, when making a safety risk determination, the department should rely on "more than conclusory language, generalized allegations or mere arguments . . . . Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." (Internal quotation marks omitted.) *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 191–92. If the department's determination results in a complaint to the commission, however, the commission's only role is to determine whether the department's reasons were frivolous, patently unfounded or in bad faith, not whether it would have agreed with the department's determination. In other words, the commission operates in the same manner as an appellate tribunal, not as a finder of fact.

Thus, we do not disagree with the plaintiff's contention that the legislative history of § 1-210 (b) (19) supports the conclusion that the *department* should apply the standard set forth in *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 191–92, when making its safety risk determination. See 43 H.R. Proc., Pt. 5, 2000 Sess., p. 1588, remarks of Representative Alex Knopp (reasonable grounds to apply exemption "would not include a general concern for disclosure of these records, but rather knowledge of a particular set of circumstances that would lead one to the conclusion that disclosure could result in harm to a person or to state property"). These remarks do not support the conclusion, however, that the commission may substitute its opinion for the determination of the department if the department's reasons are not frivolous or patently unfounded. Moreover, nothing in Representative Knopp's remarks suggests that the legislature believed that the only "particular set of circumstances" that could constitute reasonable grounds for withholding information would be previous threats or acts of violence resulting from disclosure of precisely the same type of information.

[15] We emphasize, however, that, to avoid confusion and proliferation of standards, the commission and the courts should use the specific language of *Van Norstrand* when reviewing an agency's determination as to whether an exception to the disclosure requirement of the act applies. The plaintiff contends, however, that the standard set forth in *Van Norstrand* does not

apply in the present case because the statute at issue in *Van Norstrand*, namely, General Statutes (Rev. to 1989) § 1-19 (b) (1), which is now codified at § 1-210 (b) (1), required the public agency to engage in a balancing test, whereas § 1-210 (b) (19) does not. Our conclusion that *Van Norstrand* supplies the proper standard is based, however, on the fact that § 1-210 (b) (19), like § 1-210 (b) (1), provides that an agency other than the commission will make the determination that the exemption applies in the first instance. Thus, the fact that, unlike § 1-210 (b) (19), § 1-210 (b) (1) requires the agency to engage in a balancing test in making its determination is irrelevant.

---