******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOAN LAFRANCE *v.* DEAN W. LODMELL
(SC 19614)
(SC 19615)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Robinson and Vertefeuille, Js.*

*Argued April 6—officially released September 6, 2016*

*Dana M. Hrelic*, with whom were *Wesley W. Horton* and, on the brief, *Brendon P. Levesque*, for the appel-

lant (defendant).

*Mathew P. Jasinski*, with whom was *Laura W. Ray*, for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. This consolidated appeal arises from a marital dissolution action brought by the plaintiff, Joan LaFrance, against the defendant, Dean W. Lodmell. On appeal, the defendant asserts that the trial court improperly: (1) applied General Statutes § 46b-66 (c) to an agreement to arbitrate contained within a prenuptial agreement between the parties and limited arbitration to the sale of a jointly owned residential property (residence); (2) denied the defendant's request for leave to file an amended cross complaint to assert certain claims against the plaintiff in the dissolution action; and (3) confirmed the arbitration awards where the arbitrator exceeded the scope of her authority and the scope of the submission. We reject the defendant's claims and affirm the judgment of the trial court.[1]

The following facts and procedural history are relevant to the resolution of the defendant's appeal. "In contemplation of marriage, the parties entered [a prenuptial agreement] on November 22, 2000. They were married on November 25, 2000. Neither party contests the enforceability of the [prenuptial] agreement. On March 15, 2010 . . . an action for dissolution of marriage [was commenced]. [The agreement to arbitrate in] the [prenuptial] agreement provides: 'In the event of any dispute hereunder, such dispute shall be resolved by first submitting the matter to mediation. If mediation fails, then the matter shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association.' . . . [The trial court] ordered the parties to proceed to arbitration on the matter of 'the sale of the [residence] . . . and what procedures are to be followed, and what proceeds each party is entitled to from a sale.' " *Lodmell* v. *LaFrance*, 154 Conn. App. 329, 330–31, 107 A.3d 975 (2014), cert. denied, 315 Conn. 921, 107 A.3d 959 (2015).

The defendant appealed to the Appellate Court from the trial court's order and the plaintiff filed a motion to dismiss the appeal for lack of a final judgment. Id., 331. On November 16, 2011, the Appellate Court granted the plaintiff's motion to dismiss the appeal for lack of a final judgment. Id. In October, 2012, the parties participated in a three day hearing before an arbitrator, Donna M. Wilkerson, who issued "a partial award on November 9, 2012, which was modified on December 17, 2012, and a final award on December 17, 2012 . . . ." Id.

On December 30, 2013, the trial court rendered judgment confirming the partial arbitration award and confirming in part, modifying in part, and vacating in part the final arbitration award, from which the defendant appealed. Thereafter, on April 3, 2014, the defendant filed a request for leave to file an amended answer and cross complaint in the present case, which was denied.

On January 15, 2015, the trial court rendered judgment dissolving the marriage, allocating property, interpreting the prenuptial agreement and deciding all pending motions. The defendant then filed a second appeal. These two appeals were then consolidated and transferred to this court pursuant to General Statutes § 51-199 and Practice Book § 65-1. Additional facts will be set forth as necessary.

## I

The defendant first claims that the trial court improperly applied § 46b-66 (c) to the agreement to arbitrate contained within the prenuptial agreement. Specifically, the defendant asserts that § 46b-66 (c) applies only to an agreement to arbitrate that has been entered into after an action for dissolution has been filed. The defendant further claims that, even if § 46b-66 (c) applies to agreements to arbitrate contained in prenuptial agreements, the trial court improperly contravened the terms of the prenuptial agreement in the present case by limiting the scope of the arbitration. In response, the plaintiff asserts that the trial court properly applied § 46b-66 (c) to the agreement to arbitrate in the prenuptial agreement. The plaintiff further asserts that the trial court properly found, pursuant to § 46b-66 (c), that it would not be " 'fair and equitable under the circumstances' " to require the parties to arbitrate claims for damages that were not allowed by the prenuptial agreement. We agree with the plaintiff.

## A

The resolution of whether § 46b-66 (c) applies to an agreement to arbitrate in a prenuptial agreement presents an issue of statutory construction.[2] In conducting this analysis, "we are guided by the well established principle that [i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . We are also guided by the plain meaning rule for statutory construction. See General Statutes § 1-2z." (Citations omitted; internal quotation marks omitted.) *Cales* v. *Office of Victim Services*, 319 Conn. 697, 701, 127 A.3d 154 (2015).

Section 46b-66 (c) provides: "The provisions of chapter 909 shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided (1) an arbitration pursuant to such agreement may proceed only after the court has made a thorough inquiry and is satisfied that (A) each party entered into such agreement voluntarily and without coercion, and (B) such agreement is fair and equitable under the circumstances, and (2) such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody. An arbitration award in such action shall be confirmed, modified or vacated in accordance with the provisions of chapter 909."[3]

The statutory language provides no express guidance as to whether the legislature intended for it to apply to agreements to arbitrate that are entered into as part of a prenuptial agreement. The legislature's use of the term "*any* agreement" rather than the term "*an* agreement," however, strongly suggests an intent to include all agreements to arbitrate matters related to dissolutions of marriage. See, e.g., *Dowling* v. *Slotnik*, 244 Conn. 781, 802, 712 A.2d 396 (use of term " 'any person' " indicative of legislature's intent to include all persons), cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

The defendant asserts, however, that the use of the phrase "in an action for dissolution" limits the applicability of § 46b-66 (c) to only those agreements to arbitrate that are entered into after an action for dissolution has been filed and, therefore, excludes agreements to arbitrate that are entered into as part of prenuptial agreements. We disagree. There is nothing in the plain language of the statute that indicates that § 46b-66 (c) applies only to an agreement to arbitrate that is entered into after an action for dissolution has been filed. To the contrary, the broad language of § 46b-66 (c) includes "any agreement to arbitrate in an action for dissolution . . . ." Agreements to arbitrate contained in prenuptial agreements, like the agreement to arbitrate in the present case, are by definition agreements to arbitrate issues that would only arise once the parties are involved "in an action for dissolution . . . ." General Statutes § 46b-66 (c).

If the legislature intended to exclude agreements to arbitrate that are contained within prenuptial agreements, it could have expressly done so. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013); see also *Gould* v. *Freedom of Information Commission*, 314 Conn. 802, 818, 104 A.3d 727 (2014). Indeed, the legislature did use limiting language elsewhere in § 46b-66 (c), when it provided that "such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody." The use of such limiting language in other portions of § 46b-66 (c) is further indication that if the legislature had intended to exclude agreements to arbitrate contained in prenuptial agreements it could have done so.

Furthermore, reading § 46b-66 (c) in relationship to the entire statutory scheme of which it is a part lends additional support to our understanding that § 46b-66 (c) covers all agreements to arbitrate controversies between parties to a marriage, regardless of when the parties entered into that agreement. "In seeking to

determine [the] meaning [of a statute, § 1-2z] directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *People for Ethical Treatment of Animals, Inc.* v. *Freedom of Information Commission*, 321 Conn. 805, 816, 139 A.3d 585 (2016).

It is important to recognize that § 46b-66 (c) explains the conditions under which agreements to arbitrate between parties to a marriage are governed by the provisions of chapter 909 of the General Statutes; see General Statutes § 52-406 et seq.; which contains the procedures governing arbitration. Therefore, before chapter 909 can apply to an agreement to arbitrate between parties to a marriage, it must meet the requirements set forth in § 46b-66 (c). In turn, chapter 909 also explains what agreements to arbitrate are governed by its provisions. Specifically, General Statutes § 52-408 provides in relevant part: "[A]n agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, except issues related to child support, visitation and custody, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." In reading these two statutes together, "[w]e are . . . guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 317, 138 A.3d 257 (2016). Accordingly, because these two statutes are designed to relate to the same subject matter, we read them to operate harmoniously. Indeed, it is important to note that the relevant provisions within §§ 46b-66 (c) and 52-408 were both adopted by the legislature in 2005. See Public Acts 2005, No. 05-258, §§ 1 and 2. Therefore, we conclude that § 46b-66 (c) explains that if a court finds an agreement to arbitrate fair and equitable, it will be subject to the provisions of chapter 909. In turn, § 52-408 includes agreements to arbitrate between parties to a marriage in those agreements to arbitrate that are governed by chapter 909, subject to the court's finding that the agreement to arbitrate is fair and equitable.[4]

We reject the interpretation proposed by the defendant because it leads to absurd and unworkable results. "It is axiomatic that [w]e must interpret the statute so that it does not lead to absurd or unworkable results."

(Internal quotation marks omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 723, 104 A.3d 671 (2014); see also *State* v. *Courchesne*, 296 Conn. 622, 710, 998 A.2d 1 (2010) ("it is axiomatic that 'those who promulgate statutes . . . do not intend . . . absurd consequences or bizarre results' ").

The reading of § 46b-66 (c) proposed by the defendant and the concurring and dissenting opinion would mean that any agreement to arbitrate that is entered into as part of a prenuptial agreement is not afforded the protections of § 46b-66 (c) and, accordingly, would make such prenuptial agreements less desirable. Such a result is contrary to the public policy of this state regarding prenuptial agreements, which has been previously recognized by this court. "[R]ecent statistics on divorce have forced people to deal with the reality that many marriages do not last a lifetime. As desirable as it may seem for couples to embark upon marriage in a state of optimism and hope, the reality is that many marriages end in divorce. There is a growing trend toward serial marriage; more people expect to have more than one spouse during their lifetime. . . . [B]oth the realities of our society and policy reasons favor judicial recognition of prenuptial agreements. Rather than inducing divorce, such agreements simply acknowledge its ordinariness. With divorce as likely an outcome of marriage as permanence, we see no logical or compelling reason why public policy should not allow two mature adults to handle their own financial affairs. . . . The reasoning that once found them contrary to public policy has no place in today's matrimonial law." (Citation omitted; internal quotation marks omitted.) *Bedrick* v. *Bedrick*, 300 Conn. 691, 698–99, 17 A.3d 17 (2011). In light of this state's policy, which favors recognizing prenuptial agreements, it would not be reasonable to conclude that the legislature would have intended to exclude parties who enter into agreements to arbitrate contained within prenuptial agreements from the protections afforded by § 46b-66 (c). Moreover, the position advocated by the defendant and the concurring and dissenting opinion would allow parties that enter into an agreement to arbitrate one day prior to the filing of an action for dissolution of marriage to be subject to a different standard for enforcement of that agreement—namely, unconscionability and contractual defenses—while parties who enter into the same agreement one day after an action for dissolution has been filed receive the greater protections afforded by the standard of "fair and equitable" under § 46b-66 (c). It is not reasonable to think that the legislature intended to afford parties who agree to arbitrate controversies related to dissolution different protections based solely on when they entered into that agreement.

Furthermore, the defendant's interpretation of § 46b-66 (c) is also inconsistent with prior judicial interpreta-

tions of the statute. In *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 648–49, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015), the Appellate Court concluded that "[p]ursuant to . . . § 46b-66 (c), parties may agree, *with the court's permission*, to pursue arbitration to resolve certain issues related to their dissolution. A court does not, however, have the authority to order parties to submit such issues to arbitration absent a voluntary arbitration agreement executed between the parties. 'Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . [T]he basis for arbitration in a particular case is to be found in the written agreement between the parties.' . . . *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 115–16, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). 'Parties who have contracted to arbitrate certain matters have no duty to arbitrate other matters which they have not agreed to arbitrate. Nor can the courts, absent a statute, compel the parties to arbitrate those other matters.' *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171 (1987)." (Emphasis added; footnote omitted.) These prior judicial interpretations of § 46b-66 (c) are consistent with our understanding of that statute as applying to all agreements to arbitrate between parties to a marriage, regardless of when the parties enter into those agreements.[5]

The defendant and the concurring and dissenting opinion urge this court to interpret § 46b-66 (c) as applying only to agreements to arbitrate issues related to dissolution proceedings that are entered into after an action for dissolution has been filed, and not those entered into within prenuptial agreements. That interpretation is inconsistent with the language of § 46b-66 (c) and prior judicial interpretations of the statute that recognize that the legislature intended to give the trial court the authority to oversee agreements to arbitrate matters related to dissolution proceedings.

Accordingly, we conclude that the trial court properly applied § 46b-66 (c) to the agreement to arbitrate contained in the prenuptial agreement in the present case.

B

The defendant next claims that, even if § 46b-66 (c) applies to agreements to arbitrate contained within prenuptial agreements, the trial court improperly applied that statute in the present case. Specifically, the defendant claims that § 46b-66 (c) requires the trial court to determine only whether the parties entered into an agreement to arbitrate voluntarily and without coercion and whether that agreement, as a whole, is fair and equitable under the circumstances. The defendant asserts that, in the present case, the trial court improperly applied § 46b-66 (c) so as to limit the scope of the issues that were submitted to arbitration pursuant to the

prenuptial agreement.[6] In response, the plaintiff claims that the trial court properly applied § 46b-66 (c) in the present case. Specifically, the plaintiff claims that the trial court properly determined the scope of the parties' agreement to arbitrate and properly determined that it would be fair and equitable to arbitrate only those issues that were within the scope of the parties' agreement. We agree with the plaintiff.

We begin by setting forth the applicable standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007), quoting *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994). In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . *Bender* v. *Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001). Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. *Borkowski* v. *Borkowski*, supra, 740. . . . See *In re T.K.*, 105 Conn. App. 502, 506, 939 A.2d 9 ([t]he application of a statute to a particular set of facts is a question of law to which we apply a plenary standard of review), cert. denied, 286 Conn. 914, 945 A.2d 976 (2008); *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998) (interpretation of statutory scheme that governs child support determinations constitutes question of law)." (Internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013).

In the present case, the trial court determined as follows: "The prenuptial agreement between the parties dated November 22, 2000, addresses the disputed claims of the parties [regarding the sale of joint assets] . . . . [The prenuptial agreement] . . . specifically addresses arbitration. The only matter in dispute for arbitration is the sale of the [residence] . . . and what procedures are to be followed, and what proceeds each party is entitled to from a sale." On the basis of this determination, the trial court submitted only that one issue to the arbitrator. Thereafter, the plaintiff filed a motion for articulation. In her motion for articulation, the plaintiff asked the following: "Having found in pertinent part that: 'the only issue in dispute for arbitration is the sale of the [residence]' . . . did the [trial] court conclude based on its interpretation and construction of [the prenuptial] agreement . . . that the relief 'fixed,' 'limited,' and agreed upon between these parties did not

include damages?" (Citation omitted; emphasis omitted.) In framing this question, the plaintiff then quoted the following language from the prenuptial agreement: "Whereas, the parties, to promote marital tranquility, desire to fix, limit, and determine by this [a]greement the interest, rights, and claims that may accrue to each of them in the property and estate of the other by reason of their marriage or in the event of marital difficulties herein referred to, and to accept the provisions of this [a]greement in lieu and in full discharge, settlement, and satisfaction, of any and all interests, rights, and claims that otherwise each might or could have under the law, in and to the property and estate of the other, both before and after the other's death . . . ." (Emphasis omitted; internal quotation marks omitted.) In response to the plaintiff's question, the trial court answered as follows: "Granted."

In doing so, the trial court followed the requirements of § 46b-66 (c). Specifically, the trial court engaged in a thorough inquiry into the agreement of the parties. Indeed, in its memorandum of decision, the trial court explained that "[t]he parties . . . have agreed that the [prenuptial] agreement between them is in full force and effect." The trial court further explained that, on the basis of the prenuptial agreement, specifically the provision related to the sale of joint assets and the agreement to arbitrate, it was appropriate to submit the matter of the sale of the residence to the arbitrator. In reaching this conclusion, the trial court implicitly determined, in accordance with § 46b-66 (c), that applying the agreement to arbitrate to the sale of the residence was fair and equitable under the circumstances.

As the trial court explained in response to the plaintiff's motion for articulation, it had determined, after a thorough inquiry of the parties' agreement to arbitrate, that claims for damages arising out of the marriage were barred under the prenuptial agreement. We agree with the trial court's interpretation of the prenuptial agreement and, therefore, conclude that the trial court properly refused to submit any claims for damages to the arbitrator. Accordingly, we conclude that the trial court properly applied § 46b-66 (c) to the facts of present case.

II

The defendant next claims that the trial court abused its discretion by denying his request for leave to file an amended answer and cross complaint. Specifically, the defendant claims that the trial court improperly denied his request for leave to file an amended cross complaint in which he asserted eight claims that were not submitted to the arbitrator. In response, the plaintiff asserts that the trial court properly denied the defendant's motion for leave to file an amended answer and cross complaint. The plaintiff claims that the trial court prop-

erly precluded the defendant's request to raise claims for damages based on the law of the case because the trial court had previously determined that the prenuptial agreement barred claims for damages. The plaintiff further asserts that the trial court properly denied the defendant's request to amend because it was untimely and any amendment at that point would have been prejudicial to the plaintiff. We agree with the plaintiff.

On April 3, 2014, the defendant filed a request for leave to file an amended answer and cross complaint. The defendant asserted eight claims that he was not able to raise in the arbitration proceeding because they were not contained within the arbitration order entered by the trial court. In his proposed amended cross complaint, the defendant sought to assert the following claims: (1) breach of contract; (2) civil theft; (3) conversion; (4) violation of General Statutes § 53a-250 et seq., which governs computer crimes; (5) breach of the covenant of good faith and fair dealing; (6) unjust enrichment; (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress. The defendant sought compensatory damages; treble damages under General Statutes § 52-564; double damages under General Statutes § 47a-46; treble damages under General Statutes § 52-570b (c); punitive damages; indemnification; and attorney's fees. The defendant also demanded a jury trial.

The plaintiff objected to the defendant's request, claiming that it was barred by the trial court's memorandum of decision dated September 2, 2011, and the arbitration submission contained therein. The plaintiff also asserted that the trial court's articulation, in which the trial court clarified that it had previously determined that the prenuptial agreement barred any claims for damages related to the dissolution proceeding, should be determinative of any inquiry.

The trial court agreed with the plaintiff and, accordingly, denied the defendant's request for leave to file an amended answer and complaint. In doing so, the trial court explained that the "ruling of September 2, 2011, as clarified [in the articulation of] November 16, 2011, is the law of the case." The trial court further explained that "[i]nterspousal tort and contract claims" are "more appropriately pursued in a separate civil action."

We begin by setting forth the standard of review applicable to the defendant's claim. "Our standard of review . . . is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be

exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is [the] burden [of the party proposing the amendment] to demonstrate that the trial court clearly abused its discretion. . . . That an amendment would confuse the issues in the case also supports a trial court's decision to deny permission to amend a complaint or special defense." (Citations omitted; internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 759, 95 A.3d 1031 (2014).

We conclude that the trial court did not abuse its discretion in denying the defendant's motion for permission to amend his pleadings to assert additional claims against the plaintiff. First, the defendant's motion was filed approximately two and one-half years after the trial court had determined the issue to submit to the arbitrator, and more than one and one-half years after the parties' arbitration hearing. Second, the defendant's motion was filed approximately three months before the parties' dissolution trial. The defendant's cross complaint and the related defenses would have raised many complex issues, which would have required motions and discovery. Therefore, granting the defendant's request to amend at such a late stage would have significantly delayed the trial and prejudiced the plaintiff. Accordingly, we cannot conclude that the trial court abused its discretion by denying the defendant's request to amend. See *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 257–58, 905 A.2d 1165 (2006) ("[b]ecause the trial court reasonably could have concluded that granting the plaintiff's request to file a second amended complaint would have delayed the trial and prejudiced the defendants, the trial court did not abuse its discretion by denying the plaintiff's request" [footnote omitted]).

Furthermore, as the trial court explained, the defendant could have filed a separate civil action to raise his claims against the plaintiff. Even if claims were not released in the prenuptial agreement, this court has recognized that, "a final decree of divorce is res judicata with respect to all issues which were, or could have been, litigated in the proceeding." (Internal quotation marks omitted.) *Loughlin* v. *Loughlin*, 280 Conn. 632, 645, 910 A.2d 963 (2006). "[I]n *Delahunty* [v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 583–84, 674 A.2d 1290 (1996)], we created an exception to the rule of res judicata by concluding that the doctrine did not preclude the plaintiff's tort action against her former spouse even though the alleged conduct occurred during the marriage and she had made her claims at the dissolution proceeding. . . . After considering the pur-

poses of res judicata, we concluded that the doctrine should not require parties to bring tort actions based on claims that arise during a marriage in the dissolution proceeding and that 'because there are significant differences between a tort action and a dissolution action, the maintenance of a separate tort action will not subject the courts and the defendant to the type of piecemeal litigation that the doctrine was intended to prevent.' . . . Specifically, we relied on the fact that '[a] tort action, the purpose of which is to redress a legal wrong by an award of damages, is not based on the same underlying claim as an action for dissolution, the purpose of which is to sever the marital relationship . . . and to divide the marital estate.' " (Citations omitted; emphasis omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 467–68, 998 A.2d 766 (2010).[7]

Accordingly, we conclude that the trial court did not abuse its discretion by denying the defendant's motion for leave to file an amended answer and cross complaint.

### III

The defendant next claims that the trial court improperly confirmed the partial award of the arbitrator and improperly confirmed in part and modified in part the final award of the arbitrator.[8] Specifically, the defendant asserts that the arbitrator exceeded her authority and the scope of the submission by issuing orders in contravention of the express terms of the prenuptial agreement.[9] In response, the plaintiff asserts that the trial court properly confirmed the partial award of the arbitrator and properly confirmed in part and vacated in part the final award of the arbitrator because the arbitrator did not exceed the scope of her authority under this unrestricted submission. We agree with the plaintiff.

Our analysis of the defendant's claim is guided by the well established principles of law governing arbitration. "Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." *Waterbury* v. *Waterbury Police Union*, 176 Conn. 401, 403, 407 A.2d 1013 (1979); see also *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 519, 710 A.2d 1343 (1998). "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted. *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Bic Pen* [*Corp.*] v. *Local No. 134*, 183 Conn. 579, 584–85, 440 A.2d 774 (1981); *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 106–107, 438 A.2d 1171 (1981)." *Garrity* v. *McCaskey*, 223 Conn. 1, 5, 612 A.2d 742 (1992).

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304, 680 A.2d 1274 (1996). Under an unrestricted submission, [an arbitrator's] decision is considered final and binding; thus the courts will not review the evidence considered by the [arbitrator] nor will they review the award for errors of law or fact. *American Universal Ins. Co.* v. *DelGreco*, [supra, 205 Conn. 186]; *Carroll* v. *Aetna Casualty & Surety Co.*, supra, 189 Conn. 19. The resulting award can be reviewed, however, to determine if the award conforms to the submission. *Garrity* v. *McCaskey*, supra, 223 Conn. 4. Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the [arbitrator was] authorized to do merely because that party dislikes the results. . . . *American Universal Ins. Co.* v. *DelGreco*, supra, 186–87. The significance, therefore, of a determination that an arbitration submission was unrestricted or restricted is not to determine what [the arbitrator is] obligated to do, but to determine the scope of judicial review of what [he or she has] done. Put another way, the *submission* tells [the arbitrator] what [he or she is] obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the [arbitrator's] decision." (Emphasis in original; internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 244 Conn. 519–20; see also *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 109–10, 779 A.2d 737 (2001).

In the present case, the defendant asserts that the submission to the arbitrator was restricted, and that, therefore, the appropriate standard of review is de novo. In support of his claim that the submission is restricted, the defendant relies on the fact that the trial court determined that "[t]he only matter in dispute for arbitration is the sale of the [residence] . . . and what procedures are to be followed, and what proceeds each party is entitled to from a sale." We disagree.

This court has previously considered whether a submission is unrestricted because it requires an arbitrator to address only one issue. In *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 112–13, this court rejected the claim that the use of the terms " 'the sole issue' " or " 'the sole purpose' " supported a claim that the parties intended

to form a restricted submission. This court reasoned as follows: "[The plaintiff] also relies on the references in [a] settlement agreement to 'the sole issue' to be determined and 'the sole purpose' of the . . . arbitration to support its claim that the parties intended to form a restricted submission. That reliance is misplaced. A 'submission is unrestricted unless otherwise agreed by the parties.' *Bennett* v. *Meader*, [208 Conn. 352, 363, 545 A.2d 553 (1998)]. We are not persuaded that the mere inclusion of the word 'sole' in the settlement agreement evidences the parties' intent to form a restricted submission. Although the references to the 'sole question' and the 'sole issue' resemble 'language restricting the breadth of issues'; *Garrity* v. *McCaskey*, supra, 223 Conn. 5; if we were to adopt [the plaintiff's] argument that the parties' submission is restricted because it required the arbitration panel to address only one question, many otherwise unrestricted submissions to arbitration would be transformed into restricted ones. See *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 244 Conn. 521–22 (whether plaintiff 'legally entitled to recover damages' pursuant to language of insurance policy created unrestricted submission); *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 581–85 ('whether the [plaintiff] violated . . . relevant provisions of the collective bargaining agreement by failing to distribute overtime equally among all toolmakers' constituted unrestricted submission)." *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 112–13.

Like the submissions in *Industrial Risk Insurers*, the submission in the present case did not contain any conditional language. The submission here required the arbitrator to determine the procedures for the sale of the residence and the proceeds to be paid by and to each party. The fact that the trial court limited the issue to be decided by the arbitrator to one issue did not render the submission a restricted one. Accordingly, we conclude that the submission to the arbitrator in the present case was unrestricted.

"The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *DelGreco*, [supra, 205 Conn. 185]. When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and

economical system of alternative dispute resolution. *Garrity* v. *McCaskey*, [supra, 223 Conn. 4–5]. Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings. . . . *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 119, 676 A.2d 825 (1996)." (Internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 43–44, 757 A.2d 501 (2000).

"When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits. *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, [168 Conn. 54, 62, 357 A.2d 466 (1975)]. An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. *New Britain* v. *Connecticut State Board of Mediation & Arbitration*, 178 Conn. 557, 562, 424 A.2d 263 (1979); *Board of Education* v. *Bridgeport Education Assn.*, 173 Conn. 287, 291, 377 A.2d 323 (1977).

"A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the [arbitrator's] decision of the legal questions involved. *Meyers* v. *Lakeridge Development Co.*, 173 Conn. 133, 135, 376 A.2d 1105 [1977]." (Internal quotation marks omitted.) *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 584. The party challenging the award bears the burden of producing evidence sufficient to demonstrate a violation of General Statutes § 52-418. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, supra, 237 Conn. 119.

With these legal principles in mind, we examine whether the award conformed to the submission in the present case. As this court has previously explained, the submission consists "of a composite of the authorizing clause in the separation agreement and the . . . demand for arbitration, including . . . claim[s] for relief . . . ." (Footnote omitted.) *Masters* v. *Masters*, 201 Conn. 50, 71, 513 A.2d 104 (1986). Therefore, in the present case, the submission includes the prenuptial agreement and the trial court's memorandum of decision, which determined that "[t]he only matter in dispute for arbitration is the sale of the [residence] . . .

and what procedures are to be followed, and what proceeds each party is entitled to from a sale."

## A

The defendant first claims that the arbitrator exceeded the scope of her authority by awarding the plaintiff certain maintenance expenses and other costs associated with the residence from July, 2012 through November, 2012, plus interest.

The following additional facts are necessary for the resolution of this claim. The parties were initially scheduled to proceed to arbitration on August 27, 2012. On June 25, 2012, the defendant filed a motion to suspend deadlines in the arbitration proceeding so that he could obtain new counsel. On June 29, 2012, the defendant's counsel filed a motion to withdraw as counsel and requested a four week continuance of all deadlines. On July 2, 2012, the arbitrator granted the defendant's request for counsel to withdraw and for a continuance pursuant to the following interim order: "By granting the [defendant's] continuance, the [plaintiff] is further burdened by having to continue to incur [the] costs of maintaining the [residence]. Pursuant to the [prenuptial] [a]greement . . . the parties agreed that they would act in good faith and would deal '*fairly* toward the other pursuant to this agreement.' . . . In order to ensure fairness to both parties with regard to the present dispute, which deals primarily with the sale of the [residence], the [defendant] shall take over the costs of maintaining the [residence] by paying the mortgage, [homeowners] insurance, real estate taxes, and external grounds maintenance . . . . [T]he [defendant] shall bear the costs of the maintenance of the [residence] as stated . . . until either [residence] is sold or the arbitration hearing is completed, whichever occurs first." (Citation omitted; emphasis in original; footnote omitted.)

In August, 2012, the plaintiff filed a motion to compel, which the arbitrator granted. Specifically, the arbitrator ordered the defendant to provide "full reimbursement" to the plaintiff for the costs incurred in maintaining the residence since July 2, 2012. At the time of the arbitration hearing in October, 2012, the residence had not yet been sold. In November, 2012, the arbitrator issued the partial arbitration award, which confirmed her interim order and required the defendant to pay the expenses for the residence from July, 2012 through October, 2012. In addition, the partial arbitration award ordered the defendant to pay $9649.02 in maintenance and costs for November, 2012. The partial arbitration award also ordered the defendant to pay statutory interest of 10 percent per annum on these sums beginning on the date of its issuance.

In her motion to compel, the plaintiff also sought attorney's fees pursuant to the prenuptial agreement.

As grounds for the attorney's fees, the plaintiff asserted that the defendant had failed to comply with the partial arbitration award, requiring the plaintiff to file the motion to confirm. The arbitrator granted the plaintiff's motion for attorney's fees in the final arbitration award, requiring the defendant to pay $8403.75 plus interest of 10 percent per annum from the date of its issuance.

The defendant asserts that the arbitrator acted beyond the scope of her authority in requiring the defendant to contribute to the maintenance of the residence from June, 2012 through November, 2012, and by awarding the plaintiff interest and attorney's fees. We disagree. As the arbitrator recognized, the prenuptial agreement provided that the parties would act in good faith and would deal "*fairly* toward the other pursuant to this agreement." (Emphasis added.) The arbitrator interpreted this provision in the submission to authorize payment of expenses incurred by the plaintiff related to the residence caused by the delay of the arbitration hearing, which was requested by the defendant. As we have explained previously herein, "[w]here the submission does not otherwise state, the [arbitrator is] empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the [arbitrator] was erroneous." (Internal quotation marks omitted.) *Masters* v. *Masters*, supra, 201 Conn. 72. Because the submission in the present case contains no limitations on the power of the arbitrator to interpret the agreement, "[t]o the extent that the defendant claims that the arbitrator misapplied or overlooked part of the agreement, then appellate review is foreclosed." Id., 72–73. Accordingly, we cannot conclude that the arbitrator exceeded the scope of her authority by ordering the defendant to pay expenses relating to the maintenance of the residence for the period of time that the arbitration hearing was delayed at the defendant's request.

B

The defendant also claims that the arbitrator exceeded the scope of her authority by awarding the plaintiff $45,000, which represents $3000 per month for the common household expenses for the fifteen months prior to the notice of separation, in the final arbitration award because "the [defendant] had not contributed to the common household expenses pursuant to the [prenuptial] [a]greement." The prenuptial agreement provided that the parties were "to contribute in mutually agreeable amounts" to inter alia, the mortgage, property taxes, insurance and maintenance expenses of the residence. Although the defendant asserts that there was no such mutual agreement and that the plaintiff was solely responsible for all expenses associated with the residence, the defendant has not pointed to any evidence to call the arbitrator's conclusion to the

contrary into question. The defendant also claims that the arbitrator exceeded the scope of her authority in the final arbitration award because she required the defendant to pay the plaintiff $66,000 plus interest, representing $5500 per month for the twelve month period following the notice of separation. The defendant asserts that this portion of the final arbitration award is clearly erroneous, because he "had already paid his [post separation] notice obligations," and falls outside the scope of the submission, because it does not concern either the sale of, or proceeds from, the residence. We disagree with these claims of the defendant. First, as we have explained previously in this opinion, "the [arbitrator is] empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous." (Internal quotation marks omitted.) *Masters* v. *Masters*, supra, 201 Conn. 72. Second, we also conclude that the issue of whether the defendant satisfied his obligations to pay expenses on the residence is within the submission because it relates to "what proceeds each party is entitled to from a sale." Accordingly, we cannot conclude that the arbitrator exceeded the scope of her authority by ordering the defendant to pay expenses associated with the residence.

C

The defendant further claims that the arbitrator exceeded the scope of her authority by entering orders in the final arbitration award pertaining to the return of certain items of personal property to the defendant that were located at the residence and in the possession of the plaintiff. Specifically, the arbitrator proscribed certain times and terms for the return of the defendant's property. The defendant asserts that these limitations exceeded the scope of the arbitrator's authority because the prenuptial agreement provides that the parties have " 'the sole and exclusive right at all times to manage and control [their] [s]eparate [p]roperty' " and no provision of the submission gave the arbitrator the authority to place restrictions on the defendant's personal property. We disagree with the defendant's claim. The submission to the arbitrator clearly authorized the arbitrator to decide "what procedures are to be followed" for the sale of the residence. It is reasonable that removal and return of the defendant's personal property from the residence is an important aspect of the procedures by which the sale will occur because the defendant's personal property would need to be removed prior to any sale. Accordingly, we cannot conclude that the arbitrator exceeded the scope of her authority by addressing the return of the defendant's personal property.

On the basis of the foregoing, we conclude that the

trial court properly concluded that the arbitrator did not exceed the scope of her authority.[10]

The judgment is affirmed.

In this opinion ROGERS, C. J., and PALMER, McDON-ALD and VERTEFEUILLE, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Robinson and Vertefeuille. Although Justice Eveleigh was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] We note that, in light of this conclusion, we need not reach the alternative grounds for affirmance raised by the plaintiff.

[2] The concurring and dissenting opinion asserts that the trial court did not apply § 46b-66 (c) and instead "that the [trial] court . . . undertook to interpret the [prenuptial] agreement, including the [agreement to arbitrate]." As a result, the concurring and dissenting opinion asserts that it is unnecessary for this court to reach the issue of whether § 46b-66 (c) is applicable in the present case. We disagree. First, we conclude that the trial court did apply § 46b-66 (c). Specifically, the trial court's memorandum of decision dated September 2, 2011, arose from the plaintiff's motion in limine, pendente lite, dated April 11, 2011. In that motion, the plaintiff explicitly invoked § 46b-66 (c) and moved for the court to conduct a " 'thorough inquiry' " under that statute to determine which issues should be submitted to arbitration. Furthermore, during two days of oral argument on the motion, both the plaintiff's attorney and the defendant's attorney addressed the applicability of § 46b-66 (c). Indeed, the applicability of § 46b-66 (c) was at the forefront of the parties' oral arguments and the trial court's questioning. Indeed, the plaintiff's claim that the issues submitted to the arbitrator should be limited was based on § 46b-66 (c). Therefore, although the trial court does not explicitly cite § 46b-66 (c) in the memorandum of decision dated September 2, 2011, the fact that it limited the issues submitted to the arbitrator indicates that the trial court found § 46b-66 (c) applicable. In addition, in the memorandum of decision dated January 15, 2015, the trial court explicitly referenced that the plaintiff's motion in limine was filed under § 46b-66 (c) and that the trial court had considered § 46b-66 (c). Furthermore, neither party sought an articulation from the trial court on whether it applied § 46b-66 (c), and the defendant concedes that the trial court did apply the statute. Accordingly, we conclude that the trial court did apply § 46b-66 (c) in the present case. Second, contrary to the concurring and dissenting opinion, we conclude that a determination of whether § 46b-66 (c) applies in the present case is necessary to the resolution of the claims on appeal.

[3] We recognize that General Statutes § 46b-36g (a) provides in relevant part that "[a] premarital agreement . . . shall not be enforceable if the party against whom enforcement is sought proves that . . . (2) [t]he agreement was unconscionable when it was executed or when enforcement is sought . . . ." This standard differs from the requirement in § 46b-66 (c) (1) (B) that the trial court find that the agreement to arbitrate is "fair and equitable under the circumstances . . . ." To the extent that §§ 46b-36g (a) and 46b-66 (c) (1) (B) are facially in tension, "we are mindful of the well established principle of statutory interpretation that requires courts to apply the more specific statute relating to a particular subject matter in favor of the more general statute that otherwise might apply in the absence of the specific statute. [I]t is a [well settled] principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Internal quotation marks omitted.) *Studer* v. *Studer*, 320 Conn. 483, 497–98, 131 A.3d 240 (2016). Therefore, we conclude that the general standard set forth in § 46b-36g governs whether a prenuptial agreement, as a whole, is enforceable. The enforceability of an agreement to arbitrate is, however, governed by the specific standard set forth in § 46b-66 (c), even if it is contained within a prenuptial agreement. Accordingly, although a prenuptial agreement is enforceable under § 46b-36g if the court is satisfied that it is not unconscionable, an arbitration provision contained within a prenuptial agreement is enforceable under § 46b-66 (c) only if the court finds that

enforcement of the arbitration provision itself is fair and equitable under the circumstances.

[4] The concurring and dissenting opinion asserts that § 52-408 "conflicts with the reading of § 46b-66 (c) that the plaintiff advocates and the majority adopts." Specifically, the concurring and dissenting opinion asserts that "[i]f, as the plaintiff and the majority contend, § 46b-66 (c) applies to all agreements to arbitrate dissolution matters, dispite when such agreements are entered into, then the test for enforceability prescribed in § 52-408—general contract defenses—would be completely supplanted by the test set forth in § 46b-66 (c) (1) (B)—fair and equitable." We disagree. Instead, as we explained previously in this opinion, § 46b-66 (c) governs the circumstances in which the provisions of chapter 909 of the General Statutes, including § 52-408, apply to agreements to arbitrate between parties to a marriage. Therefore, even if the "fair and equitable" standard of § 46b-66 (c) encompasses the test of § 52-408, it does not make the statutes inconsistent; instead it allows the two to operate harmoniously. Contrary to the concurring and dissenting opinion, the language in § 52-408 is not rendered meaningless, but is made consistent with § 46b-66 (c) by recognizing that agreements to arbitrate between parties to a marriage are subject to the provisions of chapter 909 if the court has determined that the agreement is fair and equitable.

[5] The concurring and dissenting opinion asserts that our interpretation of § 46b-66 (c) may interfere with the arbitration of disputes between parties to a marriage. Although our interpretation of § 46b-66 (c) would require a trial court to determine that an agreement to arbitrate is fair and equitable prior to an arbitration proceeding, such an interpretation both furthers the public policy of this state to protect parties to a marriage in the dissolution process and fosters judicial economy by not allowing an arbitration proceeding to go forward that may ultimately be challenged.

[6] The defendant also claims that the trial court improperly limited the scope of the issues submitted to the arbitrator because the parties had not agreed to arbitrate the issue of arbitrability. On the basis of our conclusion that § 46b-66 (c) applies to agreements to arbitrate contained in prenuptial agreements, we conclude that it was proper for the trial court to examine the agreement to arbitrate in the present case and determine which issues were "fair and equitable" to submit to the arbitrator, and that the issue of whether the parties intended to arbitrate the issue of arbitrability is not relevant under the circumstances. See General Statutes § 46b-66 (c).

[7] The defendant asserts that if he were to bring his claims in a postdissolution action, those claims may be barred by the doctrine of res judicata pursuant to this court's decision in *Weiss*. Although we make no determination of whether res judicata will bar any possible future claims by the defendant, we take this opportunity to explain that, in *Weiss*, this court did not overrule *Delahunty*. Instead, this court explained in *Weiss* that the reasoning in *Delahunty* was "inapplicable . . . because although the plaintiff's claim sounds in tort and contract, it is, in substance, a claim regarding the meaning of a phrase in the agreement. Additionally, the crux of the plaintiff's claim is an assertion that she is entitled to an additional portion of the marital estate pursuant to the agreement—a contract they had entered into to dissolve their relationships—not to damages as traditionally conceived in tort actions. To conclude that the plaintiff may avoid res judicata by characterizing her claim as a tort claim would be to elevate form over substance, which we will not do." (Footnote omitted.) *Weiss* v. *Weiss*, supra, 297 Conn. 468. Accordingly, in *Weiss*, this court concluded that the plaintiff's claim was barred by the doctrine of res judicata.

[8] We understand the defendant's claim that the trial court improperly denied the defendant's motions to reargue and to reconsider the orders of the trial court regarding the partial and final award of the arbitrator, to be a claim that the trial court improperly confirmed the partial award of the arbitrator and confirmed in part and modified in part the final award of the arbitrator.

[9] The defendant further asserts that, by confirming the awards of the arbitrator and incorporating those awards into its judgment, the trial court improperly distributed property in violation of the prenuptial agreement. The defendant's claim that the trial court improperly distributed property in violation of the prenuptial agreement raises the same issues as his claim that the trial court improperly confirmed the awards of the arbitrator. Because we conclude that the trial court properly confirmed the awards of the arbitrator, we need not reach the defendant's claim that the trial court improperly distributed property in violation of the prenuptial agreement.

To the extent that the defendant's claim that the trial court improperly distributed property in violation of the prenuptial agreement includes the trial court's award of interest and attorney's fees for the costs the plaintiff incurred to remove and store the defendant's personal property after he was ordered to remove the same from the residence, which was about to be sold, we conclude that it is proper for the trial court to award interest when a former spouse is not justified in failing to pay sums due. "It is well established that we will not overrule a trial court's determination regarding an award of interest absent a clear abuse of discretion." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 85, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006). "The determination of whether . . . interest is to be recognized as a proper element of [recovery] is one to be made in view of the demands of justice rather than through the application of any arbitrary rule." (Internal quotation marks omitted.) Id. "When a former spouse is not justified in failing to pay sums due . . . the award of interest is proper." (Internal quotation marks omitted.) Id., 86. Furthermore, the defendant does not point to any portion of the prenuptial agreement that precludes the award of interest.

[10] The defendant also claims that the trial court improperly modified paragraph 4 of the final arbitration award, which detailed the formula for calculating the total net proceeds from the sale of the residence and the parties' respective settlement amounts. We disagree. General Statutes § 52-419 (a) specifically authorizes the trial court to "make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy." In the present case, a review of the trial court's modification reveals that it properly modified the award to correct a material mistake regarding the amount of the mortgage on the residence, and to correct material miscalculations of figures and mistakes that did not affect the merits of the controversy. Accordingly, we conclude that the trial court properly confirmed in part, modified in part, and vacated in part the final award.